COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | |
|---|---|
| § | |
| § | No. 08-18-00163-CV |
| IN THE INTEREST OF § | Appeal from |
| § | |
| U.G.G., A CHILD. § | 109th District Court |
| § | |
| § | of Winkler County, Texas |
| § | (TC # DC17-17073) |
| § | |

## O P I N I O N

This appeal is from a judgment terminating the parental rights of Appellant, S.P.G., to his son, U.G.G. We affirm.

### FACTUAL SUMMARY

On July 20, 2016, the Texas Department of Family and Protective Services became involved with eight-month-old U.G.G. based on a report of negligent supervision by D.M., the child's seventeen-year-old mother.[1] The Department caseworker could not locate Mother, so she instructed S.P.G. (Father) to obtain legal custody of U.G.G. and to not allow Mother to have access to the child if Father believed it was unsafe to do so. Father did not follow through with obtaining custody of U.G.G. and later returned the child to Mother. At trial, Father explained that he returned U.G.G. to Mother because they had agreed each parent would have custody on

---

[1] To protect the identity of the children, the opinion will refer to various individuals by either initials or an alias. *See* TEX.R.APP.P. 9.8. U.G.G. and A.N.A. will be referred to by their initials, S.P.G. will be referred to as "Father", and the children's mother, D.M., will be referred to as "Mother". Additionally, the foster parents, R.H. and A.H., will be referred to by their initials.

alternating months.

Less than three months later, the Department received a Priority 1 intake regarding physical injuries to ten-month-old U.G.G. which occurred while in his Mother's care. Mother and U.G.G.'s maternal grandmother took him to the emergency room with a black eye, ruptured blood vessel in his eye, busted lip, and scratches on his neck and back. Mother stated that her boyfriend, J.A., had physically abused the child while she was in the shower. The injuries were two days old when Mother took U.G.G. to the emergency room. At trial, Mother testified that the Department became involved because of a "misunderstanding" about U.G.G. being abused. Caseworker Kelli Cantrell met with Mother on November 14, 2016. By that time, Mother had reunited with J.A., and Mother reported to Cantrell that she was five months pregnant. The Department provided Family Based Safety Services (FBSS) to Mother and it implemented a safety plan requiring U.G.G. to be placed with Father and restricted Mother to supervised visitation. Father again agreed to seek legal custody of U.G.G. but he failed to do so. In late February 2017, Cantrell attempted to make a home visit with U.G.G., but Father had returned U.G.G. to Mother. Father asserted that he had undergone an appendectomy and did not have anyone else he could ask to care for the child. At Cantrell's insistence, Father picked up U.G.G., but he returned the child to Mother the following day in violation of the safety plan. Mother gave birth to her second child, A.N.A., in March 2017 and tested positive for methamphetamine. Mother admitted using methamphetamine while she had U.G.G. in her care.

On March 23, 2017, the Department filed a petition seeking to terminate the parental rights of both Mother and Father to U.G.G.[2] Following a hearing in May 2017, the trial court appointed the Department as the temporary managing conservator of both U.G.G. and A.N.A. and placed them with the foster parents, A.H. and R.H.

[2] Father is not the biological father of A.N.A. The trial court terminated Mother's parental rights to both U.G.G. and A.N.A. Mother has not appealed.

Joy Welch Miller, a Department caseworker, discussed the service plan requirements with Father. The service plan required Father to complete individual counseling with Lee West and to complete parenting classes. Father attended his first counseling session, but missed the second session because it snowed. Father testified that the second session was rescheduled but he again missed it. Father explained that he "lost track" of the counseling sessions and did not attend them because he was busy performing other parts of the service plan. Father attended eight out of the twelve or fourteen parenting classes he was required to complete. He testified that he could not complete his service plan requirements because of his work hours.

Father completed a drug and alcohol assessment on June 21, 2017. He testified positive for methamphetamine on hair follicle tests done in September and November 2017, and on December 16, 2017.[3] Father also tested positive for methamphetamine on a hair follicle test done on December 16, 2017. After the first positive test for methamphetamine, Father was asked to undergo a second assessment in January 2018, but Father failed to do so. Joy Welch Miller, a Department conservatorship caseworker, discussed the positive test results with Father. Father told her that he suspected he would test positive because someone at work had been giving him drugs. Miller emphasized that Father must remain drug free if he wanted U.G.G. returned to him. On February 28, 2018, which was less than two weeks before trial, Father had another hair follicle test, and he tested positive for methamphetamine and amphetamine. Father testified that he did not start using drugs until after U.G.G. was removed from his care, and he last used methamphetamine on December 24, 2017. Consistent with what he told Miller, Father claimed that his boss gave him pills to boost his energy at work and he did not find out until later what the pills were. Despite having multiple positive drug tests, Father did not stop taking the pills until January 2018 when he left the job.

---

[3] According to testimony at trial, hair follicle tests can remain positive for up to three months after drug use.

On March 8, 2018, an associate judge heard the case and determined that Father's parental rights should be terminated. Father exercised his right to a *de novo* hearing. At the *de novo* hearing, the District Court considered the record from the trial conducted before the associate judge as well as additional evidence introduced by Father and the attorney ad litem for the child. *See* TEX.FAM.CODE ANN. § 201.015(c). The District Court found that the Department had proven by clear and convincing evidence that Father had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(E), Texas Family Code; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Father's parental rights was in the child's best interest, and it appointed the Department as the permanent managing conservator of the child.

## TERMINATION GROUNDS AND BEST INTEREST
## UNDER SECTION 161.001

Father raises eight issues challenging the legal and factual sufficiency of the evidence supporting the trial court's findings. In Issues One through Six, Father argues that the evidence is legally and factually insufficient to support the predicate termination grounds found by the trial court under Section 161.001(b)(1)(D), (E), and (O). In Issues Seven and Eight, he

challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2).

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id*. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights as well as the finding of best interest. *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.--El Paso 2014, no pet.).

*Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long

as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### *Section 161.001(b)(1)(E) -- Endangering Conduct*

We begin by examining Issues Three and Four which challenge the legal and factual sufficiency of the evidence supporting the termination of Father's parental rights under Section 161.001(b)(1)(E). The trial court found by clear and convincing evidence that Father engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered the physical or emotional well-being of the child.

The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex.App.--San Antonio 2000, pet. denied). To "endanger" means to expose the child to loss or injury or to jeopardize a child's emotional or physical health. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re A.L.*, 545 S.W.3d 138, 146 (Tex.App.--El Paso 2017, no pet.); *J.S. v.*

- 6 -

*Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.--El Paso 2014, no pet.). Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re A.L.*, 545 S.W.3d at 146; *Castaneda v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 509, 522 (Tex.App.--El Paso 2004, pet. denied).

Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.). Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex.App.--El Paso 2015, no pet.); *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex.App.--El Paso 2012, no pet.). The conduct need not occur in the child's presence, and it may occur both before and after the child has been removed by the Department. *Walker v. Texas Department of Family & Protective Services*, 312 S.W.3d 608, 617 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child

with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Evidence of illegal drug use by a parent and its effect on a parent's life and his ability to parent may establish an endangering course of conduct under Section 161.001(b)(1)(E). *See In re J.O.A.*, 283 S.W.3d at 346; *In the Interest of K-A.B.M.*, 551 S.W.3d 275, 287 (Tex.App.--El Paso 2018, no pet.); *Walker*, 312 S.W.3d at 617. Further, evidence that the parent continued to use illegal drugs even though the parent knew his parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex.App.--Fort Worth 2011, pet. denied); *Cervantes-Peterson v. Texas Department of Family & Protective Services*, 221 S.W.3d 244, 253-54 (Tex.App.--Houston [1st Dist.] 2006, no pet.).

The evidence showed that Father used illegal drugs while the termination case was pending and even though Father knew he was in danger of losing his parental rights. Father's continued drug use demonstrates poor judgment and an inability to put the interests of U.G.G. before his own. While Father claimed that he did not start using drugs until after U.G.G. was removed from his care and he stopped in January 2018 after leaving the job, the trial court was not required to believe Father's self-serving testimony. *See In re J.F.C.*, 96 S.W.3d at 266. Further, given Father's persistent use of methamphetamine during the case and his refusal to undergo a second drug and alcohol assessment just two months before trial, the trial court could reasonably conclude that Father would continue to use illegal drugs and endanger the child's well-being in the future. *See In re J.O.A.*, 283 S.W.3d at 346. The evidence also showed that Father knowingly returned U.G.G. to Mother after the child suffered injuries while in her care and despite being instructed by the caseworker to not allow Mother to have unsupervised access to the child. Father explained that he had no one else who could watch U.G.G. while he was

recovering from surgery, but Father failed to notify anyone from the Department before returning U.G.G. to Mother.

Having consider the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Father engaged in a course of conduct endangering to U.G.G.'s physical and emotional well-being under Section 161.001(b)(1)(E). *See In re J.F.C.*, 96 S.W.3d at 266; *In re K-A.B.M.*, 551 S.W.3d at 286-87. Accordingly, we find that the evidence is legally sufficient to support the trial court's finding. After viewing the entire record, we also conclude that the evidence is factually sufficient to support the challenged finding. *See In re A.M.*, 495 S.W.3d 573, 580 (Tex.App.--Houston [1st Dist.] 2016, pet. denied). Issues Three and Four are overruled. Having found the evidence sufficient to support one predicate termination ground, it is unnecessary to address Issues One, Two, Five, and Six.

*Best Interest - Legal Sufficiency*

In Issues Seven and Eight, Father challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2) of the Family Code. A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d at 927; *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or

proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the child. U.G.G. was only two and a half years of age at the time of the *de novo* trial and there is no evidence that he is able to express his desires. Evidence that a child is well-cared for by his foster family, is bonded to his foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 652-53 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d at 230. U.G.G. and his half-sister A.N.A. have resided with the foster parents since May 2017. It is undisputed that U.G.G. is well-cared for by his foster parents and is closely bonded not only to his foster family but also to A.N.A. The conservatorship caseworker and R.H. testified about U.G.G.'s strong bond to A.N.A. and how detrimental it would be to him if they were separated. Both of the children refer to the foster parents as "Mom" and "Dad". Father testified that U.G.G. lived with him for six months before he was removed from Father's care. Following U.G.G.'s removal, Father has visited with the child once every other week, and Father missed only a couple of visits. U.G.G. had lived continuously with the foster family for a year at the time of the *de novo* hearing. The first factor weighs in favor of the best interest finding.

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional

needs. *In the Interest of R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). As determined in our review of Issues Three and Four, the evidence at trial established that Father engaged in conduct which endangered the child's physical and emotional well-being, and he knowingly placed U.G.G. with Mother who endangered his physical and emotional well-being. Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002). The evidence shows that Father has poor parenting skills. In addition to engaging in illegal drug use during the case, Father endangered U.G.G. by knowingly placing him with Mother after U.G.G. suffered injuries while in Mother's care. There is also evidence that Father made an effort to improve his parenting abilities by completing his individual counseling and parenting classes between the hearing before the associate judge and the *de novo* hearing. It was the trial court's task to weigh all of the evidence related to Father's parenting skills and the court could have concluded that Father's efforts came too late and are insufficient to demonstrate that he has good parenting skills. This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Various programs were available to provide assistance to Father. At the

- 11 -

first trial before the associate judge in March 2018, Father admitted he had not completed his individual counseling sessions or parenting classes. He testified at the *de novo* trial on May 10, 2018 that he had completed both individual counseling and the parenting classes. This factor is neutral in that it neither supports nor weighs against the best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. U.G.G. and his half-sister A.N.A. have resided with the foster parents since May 2017, and by all accounts the children are thriving. R.H. testified that he and his wife love both children "very much" and plan to adopt them.

Father testified inconsistently regarding his current status and plans for the child. At the hearing in March 2018 before the associate judge, Father testified that he had changed jobs in January 2018 and he was living with his mother. Father planned for U.G.G. to reside with him in that home. Father also stated that he planned to move to a different home with his girlfriend if U.G.G. was returned to him. At the *de novo* hearing in May 2018, Father claimed that he had been in his current job for two years and living with his wife. Father stated that they had been married for one year and they had been living together in their own home for a couple of months. Given the obvious inconsistencies in Father's testimony, the trial court could have found that Father would not provide a stable home and his plans for U.G.G. were weak and ill-defined. After comparing Father's plan with that of the Department and foster family, the trial court could have reasonably found that the Department's plan is more realistic and allowing U.G.G. to

remain with the foster family offers him the permanency and stability he would not have with Father. The sixth and seventh factors weigh heavily in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence established that Father used illegal drugs during the pendency of the case and endangered U.G.G. by placing him with Mother despite being told by the caseworker that he should not allow Mother to have unsupervised access to the child. Based on this evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

The ninth factor is whether there is any excuse for the parent's acts or omissions. Father's brief does not address this factor or offer any excuse for Father's conduct.

Having reviewed all of the *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Father's parental rights is in U.G.G.'s best interest. Issues Seven and Eight are overruled. The *de novo* order terminating Father's parental rights to U.G.G. is affirmed.


February 26, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

- 13 -