**Affirmed and Memorandum Opinion filed March 10, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00538-CV

## IN THE INTEREST OF C.U.D., S.L.D., A/K/A S.D., J.P.J.D., K.K.J.D., A.E.D., II, CHILDREN

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2018-37155**

## MEMORANDUM OPINION

Appellant, A.E.D., appeals a final decree signed September 14, 2021, terminating his parental rights to the five children who are the subjects of this suit.[1] Appellant timely filed a notice of appeal.

Appellant's appointed counsel filed a brief in which he concludes the appeal is wholly frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), presenting a professional evaluation of the

---

[1] The trial court's order provided that the jury found by clear and convincing evidence that termination was proper under § 161.001(b)(1)(D), (E), (N), (O), (P). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (P).

record demonstrating why there are no arguable grounds to be advanced. *See High v. State*, 573 S.W.2d 807, 811–13 (Tex. Crim. App. 1978). The *Anders* procedures are applicable to an appeal from the termination of parental rights when an appointed attorney concludes that there are no nonfrivolous issues to assert on appeal. *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Appellant filed a brief informing us of the bases he believes are arguable on appeal, including that the evidence is insufficient to support a finding that termination was proper under Family Code § 161.001(b)(1)(E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). We have reviewed the entire record, counsel's brief, and appellant's pro se response and have found nothing that would arguably support an appeal. A detailed discussion of the brief would add nothing to the jurisprudence of the state. *See In re D.E.S.*, 135 S.W.3d at 330.

However,

> because prior termination for endangerment is a predicate ground for a future termination, due process and due course of law require that [a] court of appeals review the legal and factual sufficiency of the evidence supporting a trial court's order of termination under Subsections 161.001(b)(1)(D) and (E) when challenged on appeal.

*In re M.P.*, No. 21-0360, __ S.W.3d __, __, 2022 WL 333363, at *3 (Tex. Feb. 4, 2022) (per curiam); *see In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam). Thus, we will detail our review of the sufficiency of the evidence underlying the jury's finding that predicate ground for termination existed under § 161.001(b)(1)(E).

## I. FAMILY CODE § 161.001(b)(1)(E)

### A. APPLICABLE LAW

"Texas Family Code Section 161.001(b) allows for involuntary termination

of parental rights if a court finds by clear and convincing evidence both that a parent engaged in one or more enumerated predicate grounds for termination and that termination is in the best interest of the child." *In re M.P.*, __ S.W.3d at __, 2022 WL 333363, at *1 (citing Tex. Fam. Code Ann. § 161.001(b)(1)(A)–(U), (b)(2)). Subsection (E) allows for termination of parental rights if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E).

"Knowingly" requires that "the parent is aware of but disregards" the potentially endangering conduct. *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.— Houston [14th Dist.] 2017, no pet.); *see also In re U.G.G.*, 573 S.W.3d 391, 400 (Tex. App.—El Paso 2019, no pet.) ("Scienter is not required for [parent's] own acts under § 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts."). "Endanger" means "to expose to loss or injury [or] to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re V.A.*, 598 S.W.3d 317, 328 (Tex. App.— Houston [14th Dist.] 2020, pet. denied). The term "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.3d at 533; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Relevant evidence in determining whether a parent engaged in a course of endangering conduct includes conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *See In re J.O.A.*, 283 S.W.3d at 345. The relevant inquiry is whether evidence exists that a parental course of conduct endangered the

child's physical or emotional well-being. *Walker*, 312 S.W.3d at 616–17. Among the types of actions or omissions constituting evidence meeting this endangerment standard are criminal activity, convictions, and incarceration; domestic violence and propensity for violence; and absence from a child's life. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re L.M.*, 572 S.W.3d 823, 834 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Termination under (E) must be based on more than a single act or omission. *See Ruiz v. Tex. Dep't of Fam. & Protective Servs.*, 212 S.W.3d 804, 818 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## B. STANDARD OF REVIEW

The burden of proof in termination cases is "clear and convincing" evidence. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). This intermediate standard falls between the preponderance-of-the-evidence standard in civil proceedings and the beyond-a-reasonable-doubt standard in criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). "'Clear and convincing evidence' means a 'measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d at 235 (quoting Tex. Fam. Code Ann. § 101.007); *see also In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

In conducting a legal sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). Evidence is legally sufficient if, viewing all the evidence

in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *Id.* at 631.

In a factual-sufficiency review, we consider and review all of the evidence, including disputed or conflicting evidence. *J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and cannot substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.*

## C. ANALYSIS

Here, the jury heard that A.E.D.'s five children came into the Department's care after they were found in August 2019 walking down a major roadway without an adult; some of the children had no shoes and some were partially clothed, and one of the eldest daughters had a rash on her forearm that she continuously scratched. It was hot, the children were walking on the pavement, and they had bags packed with clothing and paperwork with them. When the police responded to where the children were found, they were informed that they lived in the maternal grandmother's house; however, both Mother and Father were in jail at the time. Deputy Jonathan Ajayi testified that the household was very hot, unkempt, unlocked, and lacking adequate food. Ajayi further testified that the maternal grandmother disclosed she had a traumatic brain issue and had recently had surgery.

Deputy Christopher Cano testified that the individuals in the home (the

maternal grandmother and aunt) informed Deputy Cano that they were unable to care for the children. Deputy Cano noted that the parents were not available at the time to take the children. As a result, the children were taken into the Department's care. This evidence supports the jury's finding. *See In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996) ("Although there is no evidence that L.C. inflicted direct physical abuse on her children, there is evidence that she neglected their physical needs, and neglect can be just as dangerous to the well-being of a child as direct physical abuse."); *In re M.D.V.*, No. 14-04-00463-CV, 2005 WL 2787006, at * 6 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (mem. op.) ("[A]ppellant's conduct in leaving her young children unattended, allowing one or more of them to leave the home, and leaving M.D.V. in a full bathtub could easily have resulted in tragedy. Thus, the trial court could have formed a firm belief or conviction that appellant's failure to protect or supervise her children jeopardized or exposed M.D.V. to loss or injury.").

The jury was also presented with evidence of Father's aggressive behavior, which sometimes occurred in front of the children. Amanda Bermudez, the Department's case worker assigned to the case, testified that Father was aggressive and made threats "to a lot of people" and was "disrespectful, inappropriate, I guess scary," during in-person hearings. Bermudez explained she was fearful of Father because "he's very aggressive and volatile." On an occasion when Mother and Father visited the children while the children were in the Department's care, Mother and Father "called the cops to come to the CPS office, because [Father] was alleging that CPS did not follow a court order and that this case is fraud and that [CPS] kidnapped his children." When the visitation ended, Mother and Father seized S.L.D. and J.P.J.D. "and prevented them from coming behind the locked door with" Bermudez. Father was aggressive and threatening and used obscenities.

Jessica Espaillat, a Department caseworker assigned to a case involving a different child not subject to the underlying suit, testified that Father told her "[t]hat if I show up at his residence, I would be shot and if I brought police, there would be mayhem." There was also evidence of an incident in 2016 when Father attempted to break down the door to the maternal grandmother's house while the children were present; that Father had to be restrained when the Department took the children into their care on March 22, 2016, because he became very agitated, started yelling, and refused to obey orders; and that he shut the door in the face of the Department's case worker when they were trying to check on the welfare of the children. There was also evidence that Father was accused of physically abusing Mother's child from a previous relationship. All of this evidence supports the jury's finding. *See In re L.M.*, 572 S.W.3d 834 n.7 ("Violence does not have to be directed toward the child or result in a final conviction . . . ."); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment.").

The jury was also presented with evidence of Father's criminal conduct. The Department introduced into evidence Father's convictions for theft by check in 2014, trespass and criminal mischief in 2016, assault of a family member in 2018, and evading arrest in 2018. *See In re E.R.W.*, 528 S.W.3d at 264 ("As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection (E)." (internal citation omitted)). At trial, which took place in June of 2021, Bermudez testified that Father contacted her only once or twice in 2019 to inquire about issues regarding

the children, such as their medical and schooling, and Father was not active in the children's schooling. *See In re M.D.M.*, 579 S.W.3d at 765 ("A factfinder may also infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional wellbeing.").

There was also evidence that Father used the children to panhandle in 2016, that the children's living situation was unstable, that the children were lacking a significant number of vaccinations and had no history of dental care, and that Father failed to take advantage of many forms of assistance made available to him. This evidence also supports the jury's finding. *See In re J.R.*, 171 S.W.3d 558, 578 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Failure to maintain a stable home, combined with failure to provide for the children's needs, may also support a finding under subsection 161.001(1)(E)."); *In re G.M.M.*, No. 01-20-00159-CV, 2020 WL 5048140, at *9 (Tex. App.—Houston [1st Dist.] Aug. 27, 2020, no pet.) (mem. op.) ("A parent's consistent failure to take advantage of many forms of assistance made available to help her establish safe and stable living conditions for her child may warrant termination of parental rights."); *In re K.P.C.*, No. 14-17-00993-CV, 2018 WL 2106669, at *9 (Tex. App.—Houston [14th Dist.] May 8, 2018, pet. denied) (mem. op.) ("We conclude the evidence presented with respect to Father's drug use, lack of employment or housing, and continued use of the children to panhandle at a busy intersection without adequately providing for their needs demonstrates a deliberate course of conduct from which a reasonable trier of fact could have found that Father endangered the children's emotional and physical well-being."); *see also In re J.L.B.*, 349 S.W.3d 836, 847–48 (Tex. App.—Texarkana 2011, no pet.) (noting the evidence of parent's illegal drug use and panhandling trip with the children support proof of danger under subsection E); *In re A.N.*, No. 02-14-000206-CV, 2014 WL 5791573, at *18 (Tex. App.—Fort

Worth 2014, no pet.) (mem. op.) (noting that proof of endangering conduct by father included proof of continued homelessness and having the children panhandle along the highway in the summer); *Smith v. Tex. Dep't of Fam. & Protective Servs.*, Nos. 01-09-00173-CV & 01-09-00390-CV, 2009 WL 4359267, at *7 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.) ("The failure to provide appropriate medical care for a child may also be considered conduct that endangers a child.").

Mother disputed the version of events that unfolded when Mother and Father visited the children while in the Department's care and testified that Father was not abusive, disputed that Father attempted to break down the door to the maternal grandmother's house, and stated that she did not believe Father would threaten to kill someone. However, the jury is the sole judge of the credibility of the witnesses and the weight to be given to testimony, and when there is conflicting evidence, it is the province of the jury to resolve such conflicts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

We conclude that a reasonable fact finder could have formed a firm belief or conviction that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 630–31. The evidence is both legally and factually sufficient. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 630–31.

## II.   CONCLUSION

The trial court's order is affirmed.

/s/     Margaret "Meg" Poissant
        Justice

Panel consists of Justices Wise, Jewell, and Poissant.