**Opinion filed April 16, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00317-CV

_____

## IN THE INTEREST OF R.H. AND E.H., CHILDREN

**On Appeal from the 42nd District Court**
**Callahan County, Texas**
**Trial Court Cause No. 22769**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father of R.H. and E.H.[1]  Only the mother appealed.[2]  Appellant presents a single issue challenging the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025).  We affirm the trial court's order.

---

[1]We use initials to refer to the children.  *See* TEX. R. APP. P. 9.8(b).

[2]The father voluntarily relinquished his parental rights to the children.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, and that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(1)(E), (b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Texas Department of Family and Protective Services (the Department) is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*,

3

89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re*

4

*A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at \*3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

Appellant became pregnant with twins R.H. and E.H. soon after she and the father started dating in late 2023. Her methamphetamine use began around the same time, a month or two into their relationship. Appellant claimed that prior thereto, she had not used drugs in over a decade—she resumed drug use for "survival," hoping to avoid the father's physical and emotional abuse. At some point, she moved to Baird "to get away from [the father]." However, approximately a week before the children were born, Appellant invited the father to the apartment that she shared with her twelve-year-old son, X.G. She permitted the father to stay for three days before she told him to leave. After she locked the father out, the father broke a window, attempted to pry open the door, and damaged X.G.'s father's car with a hammer. Appellant reported the attempted burglary to police but did not apply for a protective order.

When the children were born on July 3, 2024, Appellant, R.H., and E.H. tested positive for methamphetamine. Appellant admitted to using methamphetamine throughout her pregnancy, as recently as a week before she gave birth. She also revealed that the father physically abused her; he "slapped her and choked her" at the hospital hours after the children were born.

Appellant was discharged from the hospital on July 5, but the children were in the neonatal intensive care unit (NICU) until July 26. They were in incubators, on oxygen, and were fed through feeding tubes. Appellant returned to the hospital sporadically in the weeks that followed to visit the children late at night or between feeding hours. Appellant was continuously informed by hospital personnel that, due to her methamphetamine use, she was prohibited from breastfeeding the children.

Appellant nevertheless returned to breastfeed and left upset when she was prohibited from doing so.

Meanwhile, Department investigator Stephanie Fade attempted to meet with Appellant and assess the safety of her home. Appellant missed their scheduled meeting times, and was either not home or did not answer the door when Fade went to her apartment. Appellant admitted during their phone conversation to using methamphetamine a week before she gave birth, but said she used "because the [father] was beating her up." She made a point to tell Fade that she wanted the father in the children's lives, and that he was not with her when she used methamphetamine.

Fade learned that Appellant let the father inside her apartment again on July 12, then assaulted her and fled when police arrived. When Fade finally met with Appellant on July 19 at the Callahan County Sheriff's Office, Appellant refused to submit to drug testing, discuss a safety plan, or sign medical releases for her and the children. The Department was granted temporary managing conservatorship of R.H. and E.H. on July 24, 2024, and they were discharged to a foster home two days later.

Following the adversary hearing in August 2024, Appellant was ordered to complete parenting classes and a substance abuse treatment program, participate in a program such as Alcoholics Anonymous (AA) or Narcotics Anonymous (NA), and provide proof to her caseworker each month of continued participation in AA or NA. Additionally, the Department created a family plan of service for Appellant that the trial court modified, approved, and adopted as an order of the court. As part of Appellant's service plan, she was ordered to:

- maintain legal employment, a safe and stable home, and permit her caseworker access to her home;

- inform the Department of any changes in address, contact information, or household members within three days;

- complete parenting classes,

- complete a substance abuse assessment, a psychological evaluation, a mental health screening, and follow all recommendations;

- abstain from using illegal drugs or alcohol, submit to random drug screens on the day requested, and test negative for all substances;

- participate in individual counseling;

- attend scheduled parent-child visits and provide necessary baby supplies; and

- sign a release of information to allow the Department to communicate with the service providers.

Permanency case manager Joycelyn Perry attempted to contact Appellant several times to facilitate her participation in services—however, Appellant no longer lived in her apartment in Baird, and Perry's calls and text messages went unanswered. In November 2024, Perry arrived unannounced at a parent-child visitation to establish contact with Appellant. Appellant "appeared . . . agitated [and] frustrated with [Perry] that [Perry] was there," and again refused to sign a release or submit to a drug test. She also ignored Perry's numerous directives to drug test in November and December 2024, and in January 2025. On January 30, 2025, Appellant tested positive for methamphetamine after she was ordered to submit to drug testing by the trial court. As a result, her parent-child visitation was suspended. Appellant's next drug screen on March 27 was a "[n]egative dilute," which was considered an "attempt[] to alter the specimen." Although she tested negative in April, she tested positive for methamphetamine in May 2025.

The final termination hearing commenced on July 17, 2025, resumed on October 8, and concluded on October 14, 2025. Perry testified that Appellant did not maintain consistent contact with the Department or her designated service

providers, and Appellant's preferred method of communication varied. She initially told Perry that she would only respond to text messages or communicate through her attorney, then asked Perry to contact her by e-mail. Appellant informed Perry that, rather than use the service providers referred by the Department, she intended to find her own providers. But because Appellant never signed the requisite release of information, Perry was unable to make certain referrals or verify that Appellant completed her services, including inpatient treatment. Appellant likewise never provided Perry with proof of housing, employment or income, or completion of her psychological evaluation or mental health assessment.

In November 2024, the children were placed with their maternal aunt, K.S., who lives with her husband, J.S., and their five children. Perry testified that R.H. and E.H. have bonded with the family, and that K.S. and J.S. have "always been able to meet [the children's] needs in every aspect." For instance, they transported R.H. and E.H. to their physical and occupational therapy appointments to improve their muscle development, strength, and movement. They sought the additional care that E.H. needed and monitored her for signs of fetal alcohol syndrome and other developmental delays. And, due to K.S.'s and J.S.'s vigilance, it was discovered that E.H. had "an old hemorrhage, likely due from birth," as well as a heart murmur. Perry opined that K.S. and J.S. had the parenting abilities to care for the children and could provide them with a stable home.

Appellant testified on the last day of the final hearing. She described her relationship with the father as "[a] nightmare"—he was physically and emotionally abusive, and "got [her] started on [methamphetamine]." Appellant initially sought to "invoke [her] Fifth Amendment right to not incriminate [herself]" when asked whether she was responsible for her decision to engage in drug use. She testified that she last used methamphetamine in May 2025, admitted to using with knowledge

8

that she was pregnant, and admitted to using fifteen to twenty times after the children were removed. But she suggested that she did so reluctantly: "[I]n my personal opinion it all directly ties back to [the father]. She explained: "I'm a recovering addict . . . [being] around another person, an active addiction, can lead to a relapse." According to Appellant, she "fell into an old pattern" and was "terrified not to [use methamphetamine] because the repercussions of not [using] were worse."

Appellant declared that she has been sober since admitting herself into Serenity House, a substance abuse treatment facility, in June 2025. After her discharge from inpatient treatment in July, Appellant lived in a transitional home and started working at Red Lobster, but testified that she recently moved to a sober living home that could accommodate the children. Prior to the final hearing, she did not update the Department on her whereabouts, and no one had assessed the safety of the home or appropriateness for children. When asked about her sporadic contact with the Department, Appellant replied that the father smashed her phone. He also "put a developer app on" her phone so that he "could control everything from his phone," including her text messages, e-mails, and social media accounts. The father purportedly deleted Appellant's text messages and e-mails, which she testified caused her to never receive the Department's referrals for services. But she asserted that she ultimately completed most of her service plan requirements during "the whole [thirty]-something days" that she was in Serenity House. There, she received trauma counseling and acquired skills to maintain sobriety, so she addressed the domestic violence and drug use concerns that led to the removal of her children.

Appellant also endeavored to "invoke [her] Fifth Amendment right" to not incriminate herself in response to an inquiry about her new companion, Matt Patmann, and his drug use. She eventually disclosed that she "started seeing" Patmann in June 2025, and that he was on parole for manufacturing or delivering

9

methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West Supp. 2025). Appellant averred that Patmann has "been a huge support in [her] recovery" and "would work all the services" if required to by the Department.

Finally, Appellant agreed that the children were well-cared for by her sister and that she "would choose her [sister]" to care for them if her parental rights were terminated. In addition to R.H., E.H., and X.G., Appellant has two older sons with whom she has minimal contact.

At the conclusion of the hearing, the trial court terminated Appellant's parental rights to the children pursuant to Section 161.001(b)(1)(E) and found termination to be in the best interest of the children. *See* FAM. § 161.001(b)(1)(E), (b)(2). The trial court further found that despite the Department's reasonable efforts to return the children to Appellant, a continuing danger remained that prevented the children's return to her care. *Id.* § 161.001(f)(1). This appeal followed.

*Best Interest of the Children*

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed

a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of a child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Appellant does not contest the trial court's finding that she endangered the children as set forth in Section 161.001(b)(1)(E). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, evidence that Appellant endangered R.H. and E.H. could be considered by the factfinder in determining whether termination was in the children's best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *C.J.O.*, 325 S.W.3d at 266.

The record demonstrates that Appellant's endangering conduct is attributable to her persistent drug use, which "implicates most of the *Holley* factors." *In re E.D.*,

11

682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). It is well-established that a parent's continuing pattern of drug use can support a best interest finding due to the "attendant risks to employment, housing, and prolonged absence from the children." *R.R.A.*, 687 S.W.3d at 279–81; *see also In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (the parents' years of drug use supported the trial court's best interest finding). Appellant admitted to using methamphetamine while she knew that she was pregnant with R.H. and E.H., which "supports a finding of direct injury to the child[ren]." *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (relating to the trial court's endangerment findings). Appellant also ignored numerous directives to submit to drug testing and conceded that her methamphetamine use continued until May 2025. A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, is unquestionably contrary to the child's best interest. *See J.S.*, 687 S.W.3d at 551; *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs.").

Appellant attempted to elude culpability by blaming the father for her methamphetamine use, her inconsistent contact with the Department, and her failure to engage in services. Notwithstanding the abuse, Appellant communicated with the father until May 2025, when she last used methamphetamine with him, and invited him into her apartment before and after the children's removal. Significantly, Appellant allowed the father inside her apartment while X.G.—one of her three sons—was present, despite the father's propensity for violence. *See In re J.S.*, 675 S.W.3d 120, 125 (Tex. App.—Dallas 2023, no pet.) (noting the mother's "significant

history of drug use" and that she "lost custody of another child due to [her] drug use"); *In re E.C.-L.H.-D.*, No. 07-24-00190-CV, 2024 WL 4692126, at *7 (Tex. App.—Amarillo Nov. 5, 2024, pet. denied) (mem. op.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."). The domestic violence by the father against Appellant, Appellant's drug use during pregnancy and while the case was pending, and her continued association with the father constitutes evidence of emotional and physical danger to R.H. and E.H. now and in the future. *See E.C.-L.H.-D.*, 2024 WL 4692126, at *7. And Appellant's decision to risk endangering her youngest son, when she only has minimal contact with the older two, permit the inference that she is unable to meet the physical and emotional needs of the children. *See In re U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) ("In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.").

Although Appellant was repeatedly informed of the requirements to regain custody of the children, she did not engage in services until a month before the final hearing commenced. *See N.T.*, 474 S.W.3d at 479 ("recent improvement alone is not sufficient to avoid termination of parental rights") (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.)); *see also J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices."). From the inception of the case through the conclusion of the final hearing, Appellant was evasive, unresponsive, and recalcitrant—for example, she sought to invoke her Fifth Amendment right against self-incrimination three times before testifying about Patmann and his drug use, and another time to avoid accepting responsibility for her

methamphetamine use. Even assuming the truth of her testimony that she was sober, employed, and acquired housing, she failed to provide proof thereof to the Department as required by her service plan. Appellant's minimization of culpability, failure to comply with her service plan requirements, and failure to demonstrate that she addressed the Department's concerns support the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72; *E.C.R.*, 638 S.W.3d at 769; *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child."); *In re A.H.*, No.11-24-00075-CV, 2024 WL 3879987, at *7 (Tex. App.—Eastland Aug. 21, 2024, pet. denied) (mem. op.) ("[Mother's] past behavior, minimization of her conduct, drug use . . . and failure to properly address and treat her mental health issues[] permit the rational conclusion that relinquishing [the child] to her care would pose a substantial risk of harm to the child.").

The trial court was also permitted to consider any evidence of the children's desires, as well as Appellant's and the Department's plans for the children and whether the plans and expectations are realistic or weak and ill-defined. *See Holley*, 544 S.W.2d at 371–72; *U.G.G.*, 573 S.W.3d at 401–02. R.H. and E.H. were a year old when the final hearing commenced, and fifteen months old when the hearing concluded. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.); *see also N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (evidence showing that a young child had bonded with foster family supported the trial court's best interest finding). The evidence demonstrates that R.H. and E.H.

have bonded with K.S. and J.S., who have provided the children with a safe and stable home and are willing to adopt them.

Appellant, by contrast, failed to demonstrate the ability to maintain stable housing, employment, and long-term sobriety. She also failed to alleviate the Department's concerns regarding her relationship choices and domestic violence in the children's presence. And because Appellant's visitation with the children was suspended following her positive drug test in January 2025, R.H. and E.H. "are not familiar with [Appellant] . . . due to their lack of contact." Appellant's repeated disregard for the well-being of R.H. and E.H. until June 2025 demonstrates a pattern of parental indifference, which "supports a finding that termination of parental rights is in a child's best interest under every one of the *Holley* factors." *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *see also J.A.R.*, 696 S.W.3d at 257 ("Stability and permanence are paramount in the upbringing of children."). Her clear disinterest for most of the children's lives "poses an emotional and physical danger to the child[ren]" now and in the future and shows Appellant's unwillingness or inability to meet the children's needs now and in the future. *A.J.D.-J.*, 667 S.W.3d at 823; *see Holley*, 544 S.W.2d at 371–72. The record therefore reflects multiple circumstances from which the trial court may have reasonably discerned a "pattern of conduct that is inimical to the very idea of child-rearing." *J.F.-G.*, 627 S.W.3d at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72. Accordingly, Appellant's acts and omissions indicated that the existing parent-child relationship is not a proper one, which supports the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72.

Upon considering the evidence as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's

lack of parental abilities and stability, and Appellant's history of drug use, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


April 16, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.