Opinion filed April 30, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00318-CV

_____

## IN THE INTEREST OF E.T., E.T., E.T., AND E.D., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11346-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother to her four children, E.T., E.T.2, E.T.3, and E.D.,[1] and the parental rights of E.D.'s father.[2]  Both parents appealed.

On appeal, each parent presents one issue challenging the sufficiency of the evidence to support the trial court's finding that termination of that parent's parental

---

[1]To protect the identity of the children, we use pseudonyms or initials to refer to them.  *See* TEX. R. APP. P. 9.8(b).

[2]The biological father of E.T., E.T.2, and E.T.3 died before the Texas Department of Family and Protective Services (the Department) initiated its investigation that led to the proceedings below.

rights is in the best interest of their respective children. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025). We affirm the trial court's order.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the children. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that: (1) the mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) the mother engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) termination of the mother's parental rights to the children is in the children's best interest. *See id.* § 161.001(b)(1)(D), (E), (b)(2). Additionally, the trial court found that clear and convincing evidence established that: (1) E.D.'s father knowingly placed or knowingly allowed E.D. to remain in conditions or surroundings which endangered her physical or emotional well-being; (2) E.D.'s father engaged in conduct or knowingly placed E.D. with persons who engaged in conduct which endangered her physical or emotional well-being; and (3) termination of his parental rights to E.D. is in E.D.'s best interest. *See id.*

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding

was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the children;

3

(2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parents. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is

in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

The mother and father began dating in 2021, and the mother gave birth to their child, E.D., in July 2022. At the time, the mother had three young children, E.T., E.T.2., and E.T.3, from a previous relationship whose biological father, L.T., passed away in November 2021. The mother described her relationship with L.T. as "toxic," and stated that he "was abusive" and "had a drinking problem." The mother's two oldest daughters, E.T. and E.T.2, were removed from her and L.T. in 2018 soon after E.T.2 was born. They were returned to the mother's care following a final hearing in May 2020. Although L.T. voluntarily relinquished his parental rights to E.T. and E.T.2, the mother nevertheless allowed L.T. to maintain a relationship with them and gave birth to their third child, E.T.3, in December 2020.

When the Department became involved with the mother and E.D.'s father in December 2023, E.T. was six, E.T.2 was five, E.T.3 had just turned three, and E.D. was seventeen months old. The Department received a report that when the mother

5

arrived to pick up E.T. and E.T.2 from elementary school, she "smelled like [she'd] been smoking mari[h]uana," was "stumbling over her words[,] and could not formulate sentences." In explaining the marihuana odor, the mother claimed that she ran over a skunk on the way to the elementary school. The Department was initially unsuccessful in its attempts to contact the mother and E.D.'s father and assess the safety of their home. After months of efforts to avoid removal, the Department sought and was granted temporary managing conservatorship of the children in February 2024.

Around that time, E.D.'s father was charged as a co-conspirator in a sixteen-count federal indictment for conspiracy to distribute and possess with intent to distribute controlled substances, and distribution and possession with intent to distribute cocaine. *See* 21 U.S.C. §§ 841, 846. E.D.'s father pled guilty to the distribution charge in March 2024 and was sentenced to imprisonment for thirty-seven months in the Federal Bureau of Prisons followed by a three-year period of supervised release. *See* 21 U.S.C. § 841. He was confined in the Taylor County Jail until October 2024 when he was transferred to a federal prison facility in Florida.

Upon removal, E.T.3 and E.D. were placed in a foster home in Abilene while E.T. and E.T.2 were placed in a foster home in Blanket, Texas. E.T.'s and E.T.2's foster parents, C.G. and M.G., subsequently agreed to care for E.T.3 and E.D.

The Department created family plans of service for the mother and E.D.'s father that the trial court modified, approved, and adopted as orders of the court. The mother and E.D.'s father maintained consistent contact with their caseworker, Christophe Mwungura, and completed several of their service plan requirements. E.D.'s father engaged in parenting classes, counseling, and other services available to him while in federal prison before his period of supervised release began on October 1, 2025.

The mother maintained safe and stable housing, submitted to drug testing when instructed to do so, regularly communicated with the Department, notified Mwungura of changes in employment, permitted unannounced home visits, attended weekly parent-child visitation, and was "very bonded with her children." By April 2025, because the mother had substantially complied with her service plan and consistently tested negative for all substances, the Department initiated a transition to monitored return. However, the monitored return ended in June 2025 after the mother and E.T.3 tested positive for cocaine. She initially denied cocaine use when confronted by Mwungura but later revealed that she had relapsed. Three weeks before the final termination hearing, the mother self-admitted into Serenity House, a residential substance abuse treatment facility.

Following the termination of the monitored return, the children moved back into C.G.'s and M.G.'s home in Blanket where they remained until the final terminating hearing. The final hearing commenced on September 11, 2025, and concluded on October 3, 2025. The Department presented the testimony of several witnesses, including Mwungura and the mother. E.D.'s father also testified.

The mother averred that she was a good parent who "[j]ust make[s] mistakes occasionally." She claimed that she was a capable mother who kept her children away from drugs "[f]or an extensive period of time"—referring to the years between E.T.'s and E.T.2's positive drug tests in 2018 and 2019 and E.T.3's and E.D.'s positive drug tests in February 2024. The mother likewise implied that others such as L.T., her mother, her mother's acquaintances, and E.D.'s father were responsible for the children's drug exposure. She also explained that she had ended her romantic relationship with E.D.'s father and wanted no further involvement with him. In her opinion, it was not in the children's best interest to terminate her parental rights, but to instead permit her to retain, at the very least, possessory rights to her children:

7

[THE MOTHER'S TRIAL COUNSEL]: Do you understand that the [trial] [c]ourt [is] not going to put the children back with you for the time being?

[THE MOTHER]: I do.

[TRIAL COUNSEL]: You realize that there is probably a real big trust issue with you?

[THE MOTHER]: Definitely, and I don't blame them.

[TRIAL COUNSEL]: What are you requesting this [c]ourt to do?

[THE MOTHER]: To give me time to show them that I understand the program and to let me actually work it and work on myself and better myself rather than just staying clean and sober because I'm scared to die.

E.D.'s father also asked the trial court not to terminate his parental rights to E.D. and stated that he "was a dad" to all four children. He denied drug use but admitted that he sold drugs in the past and had spent most of his adulthood in prison. Prior to his imprisonment that coincided with the underlying suit, he was incarcerated for nearly thirteen and one-half years following his conviction for aggravated kidnapping. *See* TEX. PENAL CODE ANN. § 20.04 (West 2026). Seven months after his release from state prison in November 2012, he was arrested for distributing methamphetamine. He was convicted and sentenced to eight years' imprisonment for that offense and was released in 2020.

At trial, E.D.'s father claimed to have dispensed with all criminal activity from 2020 to 2022. But in 2023, he began selling drugs to an old acquaintance who turned out to be a confidential informant.

Mwungura opined that it was not in the children's best interest to return to the mother, but rather to be adopted by C.G. and M.G., so the children could remain in a home that was safe and "where they [were] not exposed to any drug[s]." Despite the parents' progress, the Department's permanency goal changed to termination of

the parent's parental rights following the mother's and the children's positive drug tests in June 2025.

Mwungura observed that the children were very bonded to C.G. and M.G., were always "excited to see them," and "look happy" in their home. C.G. and M.G. transported the children to their necessary appointments and extracurricular activities, and provided the children with direction, empathy, and love as a family unit. They even facilitated continuing contact between the children and their grandparents.

At the time of the final hearing, E.T.2 was in speech classes, and E.T. had been regularly attending a special reading intervention class four times per week for her dyslexia. All four children were in therapy. E.T. told the therapist that while in her mother's care, she was responsible for watching her younger siblings.

Gary Reed, the Court Appointed Special Advocate (CASA), testified that E.T. and E.T.2 recalled an incident while they were living with the mother when the mother "left during the night [and] took a gun with her." Reed stated that CASA's recommendation was the termination of each parent's parental rights because of their drug exposure, "not once but multiple times." He testified that the children "do not deserve that. They deserve to be in a home where they are safe, as they are" with their foster parents.

At the conclusion of the hearing, the trial court terminated each parents' parental rights pursuant to Section 161.001(b)(1)(D) and (E) and found termination to be in the best interest of their respective children. *See* FAM. § 161.001(b)(1)(D), (E), (b)(2). This appeal followed.

### III. *The Best Interest of the Children*

Each parent challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of that parent's parental rights is in

the best interest of their respective children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of each parent's parental rights is in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child[ren]." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination

grounds may be probative of the children's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Neither parent contests the trial court's endangerment findings under Section 161.001(b)(1)(D) and (E). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, evidence that each parent endangered the children could be considered by the factfinder in determining whether termination is in the children's best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *In re C.J.O.*, 325 S.W.3d at 266.

Significantly, the mother's drug use and E.D.'s father's drug-related criminal activity endangered the children and "implicate[] most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). With respect to the mother, it is well-established that a parent's continuing pattern of drug use can support a best interest finding because of the "attendant risks to employment, housing, and prolonged absence from the child[ren]." *In re R.R.A.*, 687 S.W.3d 269, 279–81 (Tex. 2024); *see also In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (the parents' years of drug use supported the trial court's best interest finding). And a parent's decision to engage in illegal drug use during the pendency of a termination suit when the parent is at risk of losing his or her children is unquestionably contrary to the children's best interest. *See J.S.*, 687 S.W.3d at 551; *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Here, the trial court could properly consider the parents' history with the Department and their treatment of other children in determining the children's best interest. E.D.'s father testified that he has a 28-year-old son with whom he has no relationship. As for the mother, her substance abuse and E.T.'s and E.T.2's positive

11

drug tests resulted in their removal in 2018. For the first several months after their removal, the mother used cocaine and alcohol daily. The mother decided to engage in services and achieve sobriety following an incident in December 2018 during which L.T. "beat [the mother] very badly and bust[ed] multiple bottles on [her] head." The mother was permitted to have unsupervised contact with E.T. and E.T.2 around December 2019, but resumed cocaine use shortly thereafter, and the children again tested positive for cocaine as a result. The mother was given another opportunity to demonstrate her ability to achieve and maintain sobriety, and E.T. and E.T.2 were returned to her care in 2020.

In the present case, each child has tested positive for drugs at least once while in the mother's care, and E.D.'s father was incarcerated for nearly half of E.D.'s life. Notably, the father's federal charges for distributing controlled substances were the result of him selling over 100 grams of cocaine "with a 91% purity level" to his acquaintance, a confidential informant, in May 2023. The mother also continuously surrounded herself and her children with unsafe people and placed the children in unsafe environments.

For instance, prior to L.T.'s death, the mother intended to facilitate a relationship between L.T. and the children despite his alcohol abuse and propensity for violence. *See In re E.A.R.*, 583 S.W.3d 898, 909 (Tex. App.—El Paso 2019, pet. denied) ("Inappropriate, abusive, or unlawful conduct by persons who live in the child[ren]'s home or with whom the child[ren] [are] compelled to associate on a regular basis in [their] home is part of the [children's] 'conditions or surroundings'" under subsection (D).); *In re E.C.-L.H.-D.*, No. 07-24-00190-CV, 2024 WL 4692126, at *7 (Tex. App.—Amarillo Nov. 5, 2024, pet. denied) (mem. op.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."). Based on the evidence in the record, the trial court was permitted to

discredit the mother's proclaimed ignorance of L.T.'s and E.D.'s father's drug-related criminal activity and instead find that she knowingly endangered her children. *See In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (Appellate courts must afford due deference to the factfinder's credibility determinations.). The pervasive presence of illegal drugs in each parent's life inevitably created uncertainty and instability for the children, "pose[d] an emotional and physical danger to the child[ren]" now and in the future, and showed their unwillingness or inability to meet the children's needs now and in the future. *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *see Holley*, 544 S.W.2d at 371–72.

While we do not discount the parents' progress, "recent improvement alone is not sufficient to avoid termination of parental rights." *N.T.*, 474 S.W.3d at 479 (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.)); *see also J.O.A.*, 283 S.W.3d at 346 ("[E]vidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices."). E.D.'s father's drug-related criminal activity and the mother's history of associating with drug dealers constitute evidence of emotional and physical danger to the children now and in the future. *See E.C.-L.H.-D.*, 2024 WL 4692126, at *7. Moreover, the mother's pattern of exposing her young children to drugs multiple times throughout their lives permits the inference that she is unable to meet the physical and emotional needs of the children. *See In re J.S.*, 675 S.W.3d 120, 125 (Tex. App.—Dallas 2023, no pet.) (noting the mother's "significant history of drug use" and that she "lost custody of another child due to [her] drug use"); *In re U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) ("In reviewing

the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.").

Although the mother acknowledged that she may have exposed E.T. and E.T.2 to cocaine in 2019 when she relapsed, she refused to accept responsibility for her children's repeated drug exposure. E.D.'s father denied using drugs or keeping them in the home prior to his arrest in 2024, yet he had no explanation for E.T.3's and E.D.'s positive drug tests other than their daycare. The trial court was free to disbelieve each parent's testimony regarding drug use and exposure and could instead credit the abundant evidence that the mother, a drug user, and E.D.'s father, a drug dealer, were responsible for the children's exposure as their caregivers. *See H.R.M.*, 209 S.W.3d at 109. Moreover, each parent's minimization of their culpability and the failure to demonstrate that they addressed the Department's concerns support the trial court's best interest findings. *See Holley*, 544 S.W.2d at 371–72; *E.C.R.*, 638 S.W.3d at 769; *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child."); *In re A.H.*, No. 11-24-00075-CV, 2024 WL 3879987, at *7 (Tex. App.—Eastland Aug. 21, 2024, pet. denied) (mem. op.) ("[Mother's] past behavior, minimization of her conduct, drug use . . . and failure to properly address and treat her mental health issues, permit the rational conclusion that relinquishing [the child] to her care would pose a substantial risk of harm to the child.").

Additional considerations include the children's desires, the parents' plans for the children, the Department's plans for the children, and whether those plans and expectations are realistic or weak and ill-defined. *See Holley*, 544 S.W.2d at 371–72; *U.G.G.*, 573 S.W.3d at 401–02. At the time of the final hearing, E.T. was eight,

14

E.T.2 was seven, E.T.3 was almost five, and E.D. was three. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.); *see also In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (evidence showing that a young child had bonded with foster family supported the trial court's best interest finding). While there was little evidence presented of the children's desires, E.T.'s therapy notes indicate that she was unhappy that the mother often left her in charge of the younger children. The record further shows that the children were happy in the care of C.G. and M.G., who were meeting all their physical and emotional needs.

By contrast, E.D.'s father had no contact with E.D. for the twenty months that he was incarcerated in federal prison. Despite having been incarcerated for most of his adult life, he continued selling drugs while living with the mother and the children. Similarly, the mother failed to demonstrate the ability to maintain long-term sobriety, and she continued exposing the children to drugs. Each parent's disregard for the well-being of their respective children demonstrates a pattern of parental indifference, which "supports a finding that termination of parental rights is in a child's best interest under every one of the *Holley* factors." *A.J.D.-J.*, 667 S.W.3d at 823; *see also J.A.R.*, 696 S.W.3d at 257 ("Stability and permanence are paramount in the upbringing of children."). The record shows multiple circumstances from which the trial court may have reasonably discerned a "pattern of conduct that is inimical to the very idea of child-rearing." *J.F.-G.*, 627 S.W.3d at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72. Thus, the acts and omissions of each parent indicate that the existing parent-child relationship is

15

not a proper one, which supports the trial court's best interest findings. *See Holley*, 544 S.W.2d at 371–72.

Upon considering the evidence as it relates to each parent's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, the mother's history of drug use, and each parent's drug-related criminal history, we hold that the evidence is legally and factually sufficient to support the trial court's findings that termination of each parent's parental rights is in the best interest of their respective children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule each parent's issue on appeal.

IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


April 30, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.