**Opinion filed June 18, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00383-CV

_____

## IN THE INTEREST OF A.D., S.R., AND K.A., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11431-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother[1] to her children, A.D., S.R., and K.A.[2]  On appeal, Appellant presents a single issue challenging the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the

---

[1]The trial court also terminated the parental rights of the alleged and unknown fathers of the children.  Only the mother appealed.

[2]To protect the identities of the children, we use initials or pseudonyms to refer to them and their family members.  *See* TEX. R. APP. P. 9.8(b).

children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025). We affirm the trial court's order.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the children. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. *See id.* § 161.001(b)(1)(D), (E). The trial court further found that termination of Appellant's parental rights is in the children's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed

2

facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the

existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department of Family and Protective Services (the Department) is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436

S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

Appellant committed the offense of possession of methamphetamine in 2018 and was subsequently placed on deferred adjudication community supervision. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West Supp. 2025). In 2020, the Department was granted temporary managing conservatorship of seven-year-old A.D. due to Appellant's continued methamphetamine use and domestic violence between her and her then-boyfriend, R.R. In June 2021, while the case involving A.D. was pending, Appellant gave birth to S.R., who tested positive for methamphetamine and marihuana. S.R. was removed and placed with Appellant's grandmother, J.M., who was already caring for A.D. at that time.

Appellant was adjudicated guilty of methamphetamine possession in April 2022 for violating conditions of her community supervision. Soon thereafter, final orders were issued in each termination suit that appointed the Department permanent managing conservator of A.D. and S.R., designated Appellant possessory conservator, ordered that the children remain in the care of J.M., and terminated the parental rights of A.D.'s father and R.R.'s parental rights to S.R.

From 2022 to 2023, the Department gave Appellant the opportunity to secure stable, drug-free housing, and demonstrate her ability to achieve and maintain sobriety. But in early 2023, Appellant stopped participating in services, stopped

drug testing, and "wasn't visiting [A.D. and S.R.] as much."  Appellant gave birth to K.A. in September 2023, and J.M. became the permanent managing conservator of both A.D. and S.R.  Despite Appellant's lack of compliance and failure to secure stable housing, she retained possessory conservatorship of both A.D. and S.R.  In November or December 2023, within a month after the Department closed its cases, Appellant and K.A. moved into J.M.'s home with A.D. and S.R.

The Department initiated another investigation in April 2024, while Appellant was still living with J.M. and the children, and drug tested all occupants of the home—all three children, J.M., and Appellant tested positive for methamphetamine. Appellant also tested positive for amphetamine and marihuana.  The Department was granted temporary managing conservatorship of the children and implemented another family plan of service for Appellant.  Appellant's service plan requirements included that she maintain sobriety, submit to random drug testing, attend counseling, complete parenting classes, attend parent-child visitation, and acquire her own stable, drug-free housing.  J.M. also participated in services, and was instructed not to allow Appellant into her home or around the children outside scheduled supervised visitation.  The children were placed back in J.M.'s care in June 2024.

Following the children's removal, Appellant completed a thirty-day inpatient substance abuse treatment program at Serenity House.  But she eventually stopped attending counseling, stopped drug testing, and ceased communicating with the Department.  In August 2024, Appellant committed Class A misdemeanor assault against R.R., and she pleaded guilty to the offense the following November.

Due to Appellant's refusals to drug test and inconsistent communication, the trial court suspended her visitation in February 2025 and ordered her to submit to drug testing.  J.M. testified that she was aware that Appellant was prohibited from

6

contacting the children until she drug tested. Despite the trial court's unequivocal instructions, J.M. brought Appellant with her and the children on a two-night stay in Fort Worth. When they returned to Abilene, K.A. tested positive for methamphetamine. The children were once again removed from J.M.'s home and placed in separate foster homes.

After the children's second removal, J.M. filed a petition in intervention as the children's managing conservator in which she sought sole managing conservatorship. In support of her requested relief, J.M. cited Appellant's history of drug abuse and domestic violence. Appellant tested positive for methamphetamine and marihuana in March and positive for methamphetamine in August 2025, and failed to submit to drug testing in July, September, and October 2025.

The trial court held the final termination hearing on October 14, 2025. At that time, A.D. was eleven, S.R. was four, and K.A. was two years old. Appellant was the first witness; she admitted that the children's and J.M.'s positive drug test results were caused by her methamphetamine use. She testified that she still struggled with methamphetamine use and used as recently as a week before the final hearing.

Appellant asked the trial court to reunite the children with J.M. in the event her parental rights were terminated. She testified that her children consider J.M.'s home as their home, and A.D. expressed his desire to return to J.M.'s care. Appellant claimed that she had not spoken to J.M. in "a few months," swore to abide by any court orders that prohibit contact with the children, and asserted that she was willing to move to eliminate those concerns.

The Department presented the testimony of five additional witnesses, including Department case managers, a Department supervisor, J.M., and A.D.'s and S.R.'s Court Appointed Special Advocate (CASA), Cole Bennett. Bennett testified that A.D. was "thriving" in his placement, was "doing very well in school," and had

7

"a very robust extracurricular life." Permanency case manager Emily Stewart likewise testified that the children were doing well in their respective placements. S.R. was in a foster home that specializes in "difficult or high-nerve" children where his foster parents managed his behaviors and met his needs. K.A.'s and A.D.'s foster parents hoped to adopt them, and A.D.'s foster mother expressed interest in adopting S.R. as well. The children's foster parents further agreed to facilitate contact between the siblings, and A.D.'s foster mother agreed to continue visits between A.D. and J.M.

Stewart testified that termination was in the children's best interest because Appellant lacked stability, continued testing positive for methamphetamine, and repeatedly exposed the children to drugs. Bennett attested that Appellant was not "a safe parent," and J.M. was "not sufficiently committed to keeping [Appellant] away from the children."

J.M. admitted during the final hearing that she knew Appellant did not submit to drug testing before they drove to Fort Worth in February 2025. J.M. proclaimed to understand the consequences of allowing Appellant around the children, and testified that she would not permit unauthorized contact if the children were placed with her. She then defended her actions by saying:

> [H]ow is it my fault that the children test positive when I'm not the drug user? . . . I'm telling you now that it's not my fault. I cannot control another human being and tell them to not do drugs. . . . The [c]ourt does not give the caregivers like me protection, because today it's looking like it's my fault that the kids are testing positive.

The Department introduced the report from J.M.'s psychological evaluation, which revealed that J.M. was defensive, "reluctant to admit to minor faults," had "a tendency to minimize any negative impact that her actions may have on other people and also on herself."

At the conclusion of the hearing, the trial court terminated Appellant's parental rights and found termination to be in the children's best interest. *See* FAM. § 161.001(b)(1)(D), (E), (b)(2). The trial court denied J.M.'s petition in intervention, and the Department was appointed permanent managing conservator of the children. This appeal followed.

*The Best Interest of the Children*

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the children's best interest.[3] "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

---

[3]Appellant argues that terminating her parental rights effectively terminates any rights of J.M. as former managing conservator of the children. Her contention on appeal rests on the alleged unjust removal of the children from J.M. in February 2025 after K.A. again tested positive for methamphetamine. However, J.M. did not appeal the trial court's judgment denying her requested relief, and, given our disposition affirming the order of termination, Appellant does not have standing to challenge the trial court's conservatorship determination on appeal. *See In re J.M.*, 603 S.W.3d 163, 171–72 (Tex. App.—Texarkana 2020, no pet.); *In re E.G.K.*, No. 04-22-00681-CV, 2023 WL 2777510, at *7 (Tex. App.—San Antonio Apr. 5, 2023, no pet.) (mem. op.). Accordingly, we discuss the evidence relevant to the issue of J.M.'s conservatorship only as it pertains to whether the termination of Appellant's parental rights was in the children's best interest.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child[ren]." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the children's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Appellant does not contest the trial court's endangerment findings under Section 161.001(b)(1)(D) and (E). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, evidence that Appellant endangered the children could be considered by the factfinder in determining whether termination is in the children's best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *C.J.O.*, 325 S.W.3d at 266.

Appellant's years of methamphetamine use endangered her children and resulted in her inability to provide the children with a safe and stable home, which "implicates most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). It is well-established that a parent's

continuing pattern of drug use can support a best interest finding because of the "attendant risks to employment, housing, and prolonged absence from the child[ren]." *In re R.R.A.*, 687 S.W.3d 269, 279–81 (Tex. 2024); *see also In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (The parents' years of drug use supported the trial court's best interest finding.). Such risks were present in this case—because of Appellant's methamphetamine use, each child tested positive for methamphetamine. *See J.S.*, 687 S.W.3d at 550 ("[D]rug use and its effects on the parent's life and ability to parent and care for a child may establish an endangering course of conduct."); *In re R.R.L.*, No. 11-25-00263-CV, 2026 WL 616107, at *7 (Tex. App.—Eastland Mar. 5, 2026, no pet.) (mem. op.) (Evidence of endangerment is relevant to the best interest analysis.).

In addition to the children's positive drug tests in April 2024, the trial court could consider Appellant's history of drug abuse and irresponsible choices. *See J.O.A.*, 283 S.W.3d at 346; *In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8, *11 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children," as evidence of endangerment, "which bears on the best-interest determination."). Appellant's drug use continued while she was on deferred adjudication for possession of methamphetamine, which led to A.D.'s removal in 2020. In addition to the removal of her children, Appellant's conduct resulted in a felony conviction for methamphetamine possession. *See In re A.M.*, No. 11-25-00253-CV, 2026 WL 545550, at *7 (Tex. App.—Eastland Feb. 27, 2026, no pet.) (mem. op.) (Any criminal activity that exposes the parent to the potential for incarceration is relevant to the best interest analysis.). Despite her pending criminal and termination proceedings, Appellant engaged in drug use while pregnant with S.R. *See In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (relating to endangerment, a parent's drug use

11

during pregnancy "supports a finding of direct injury to the child[ren]"); *J.S.*, 687 S.W.3d at 551(A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support an endangerment finding.) (citing *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)).

Moreover, Appellant minimized her culpability and failed to comply with the requirements of her service plan. *See E.C.R.*, 402 S.W.3d at 249 (A parent's failure to complete court-ordered services can support a best interest finding.); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). Appellant tested positive for methamphetamine twice in 2025, refused to submit to drug testing at least three times, and admitted to using methamphetamine a week before the final hearing. She acknowledged that she exposed the children to methamphetamine, but testified that the children tested positive "[j]ust a couple" of times, and initially did not recall that A.D. and S.R. tested positive in April 2024. Appellant's drug use caused K.A. to have detectable methamphetamine levels in her system for at least ninety days following removal. S.R. was exposed in utero and again in 2024. Even J.M. tested positive for methamphetamine in April 2024 while Appellant lived with her and the children. Appellant's failure to address the Department's concerns weighs in favor of the trial court's best interest finding. *See In re A.H.*, No. 11-24-00075-CV, 2024 WL 3879987, at *7 (Tex. App.—Eastland Aug. 21, 2024, pet. denied) (mem. op.) ("[Mother's] past behavior, minimization of her conduct, [and] drug use . . . permit the rational conclusion that relinquishing [the child] to her care would pose a substantial risk of harm to the child.").

Despite the risks to her children from her persistent drug use, Appellant accompanied J.M. and the children to Fort Worth where they all slept in the same hotel room for two nights; K.A. tested positive for methamphetamine a week later. Appellant's blatant disregard for the children's safety permitted the inference that she is unable to meet the physical and emotional needs of the children. *See In re U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) ("In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.").

Appellant's pattern of instability and parental indifference went beyond her drug use. Domestic violence between her and R.R. in 2020 contributed to A.D.'s removal, yet she continued contact with R.R. until she was convicted of assaulting him in November 2024. It is well-established that "[p]hysical violence in the home leads to an unstable and unpredictable environment for children." *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.); *see also In re S.R.*, 452 S.W.3d 351, 366–68 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Significantly, no one, not even Appellant, requested that the children be relinquished to her care, and there was no evidence of Appellant's living arrangement at the time of the final hearing. What is apparent from the record, however, was the implicit consensus that Appellant could not provide the children with a safe, drug-free home environment. The parties instead focused on J.M.'s parenting ability and protective capacity—notably, J.M.'s ability to safeguard the children *from* Appellant. Even Appellant recognized that her children needed to be protected from her. It was thus understood at the final hearing that contact between Appellant and the children would endanger their physical health or emotional well-being, which is highly relevant to the best interest determination. *See J.W.*, 645

13

S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best interest finding).

Given the child-centered focus of the best interest inquiry, courts must also consider the children's desires and positive strides since removal. *See id.* at 747; *Holley*, 544 S.W.2d at 371–72. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.); *see also In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Evidence showing that a young child had bonded with the foster family supported the trial court's best interest finding.). At the time of the final hearing, A.D. was almost twelve years old, S.R. was four, and K.A. was two. Appellant and J.M. testified that A.D. and S.R. expressed their desire to return to J.M., but there was no evidence of their desires pertaining to Appellant's parental rights. A.D. had been in J.M.'s care since his removal from Appellant in 2020. S.R. lived with J.M. his entire life before April 2024, and K.A. was removed from Appellant when she was seven months old.

The record demonstrated that the children were doing well in their placements, their foster parents were willing to facilitate contact between the siblings, and A.D.'s foster mother was willing to continue visitation between A.D. and J.M. A.D.'s and K.A.'s foster parents also intended to adopt them. While we do not discount A.D.'s desires, we hold that the trial court could have rationally concluded in this case that preserving Appellant's parental rights was not in the children's best interest. *See In re J.J.R.S.*, 627 S.W.3d 211, 223 (Tex. 2021) (stating that the Family Code "does not require termination when a severe restriction or limitation on access can also be in the best interest of the child while preserving the possibility that the parent and

child may continue to have a relationship in the future"); *In re T.M.*, No. 11-25-00273-CV, 2026 WL 770620, at \*10 (Tex. App.—Eastland Mar. 19, 2026, no pet.) (mem. op.) ("[R]estrict[ing] [the mother's] possessory rights[] without terminating them" would have protected the child's best interest because the mother was "working to fight for her kids."). The children's foster parents were meeting their needs, which necessarily included protecting them from drug exposure and drug users. Historically, J.M. allowed unauthorized contact between Appellant and the children, notwithstanding Appellant's ongoing substance abuse, which can constitute endangerment. *See In re E.A.R.*, 583 S.W.3d 898, 909 (Tex. App.—El Paso 2019, pet. denied) ("Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child . . . associate[s] on a regular basis in [the] home is a part of the [child's] 'conditions or surroundings'" under Section 161.001(b)(1)(D).).

Appellant was given countless opportunities to properly care for her children throughout the years, and instead exhibited a clear disinterest in protecting her children. *See J.S.*, 687 S.W.3d at 554; *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.). Appellant's lack of stability and failure to maintain sobriety poses an emotional and physical danger to the children now and in the future, and shows an unwillingness or inability to meet the children's needs now and in the future. *A.J.D.-J.*, 667 S.W.3d at 823; *see Holley*, 544 S.W.2d at 371–72. The record therefore shows multiple circumstances from which the trial court could have reasonably discerned a "pattern of conduct that is inimical to the very idea of child-rearing." *J.F.-G.*, 627 S.W.3d at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72. Consequently, the evidence showed that the existing parent-child relationship between Appellant and her children was not a proper one,

which supports the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72.

Upon considering the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's actions and inactions, drug use, criminal history, history with the Department, and refusal to address the issues that caused the Department's years of involvement, we hold that the evidence is legally and factually sufficient to support the trial court's findings that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72; *J.S.*, 687 S.W.3d at 554.

Accordingly, we overrule Appellant's issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


June 18, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

16